No. 13,345.

Z. W. CANNON VS. THE VAUGHN LUMBER COMPANY ET ALS.

SYLLABUS.

1. Where a debtor takes up one of a series of notes in the course of commercial business between the parties, by credits appearing in his favor on account of consignments made to the creditor and without reference to the indebtedness as a whole and without intention of affecting his previously reserved right to the correction of errors in the account, to close which the notes were given, it cannot be successfully urged against him that this is such an acknowledgement of the entire indebtedness as represented by the notes as precludes later inquiry into the correctness of items on the original account.

2. A party who, with the intention of buying for himself, negotiates and effects a purchase of timber, but causes the bill of sale therefor to be executed to

another from whom he obtains the funds with which to pay for the timber, can not afterwards be heard to shift his position, assert the timber to be that of the creditor and to claim that he (the debtor) owes only for as much thereof as he has actually used.

APPEAL from the Ninth Judicial District, Parish of De Soto— Hall, J.

*Elam & Egan* and *Lee & Liverman* for Plaintiff, Appellant.

*William Goss* for Defendants, Appellees.

The opinion of the court was delivered by

BLANCHARD, J. This was a suit to enjoin the sale, under foreclosure of mortgage, of certain real property, consisting of a few acres of land with a shingle mill and its appurtenances situated thereon.

Plaintiff owned and operated the mill and became indebted to defendant, a business concern located at San Antonio, Texas, for advances of money, etc., extended from time to time.

He made consignments of shingles to defendant and was expected, in this way, to liquidate his indebtedness. But his debit bills with the company exceeded the credits he became entitled to, and this gave rise to the claim, to secure which he, on December 31, 1897, executed a conventional mortgage in favor of defendant company on the mill property. The indebtedness at that time was calculated roughly to be $6352.80, and the same was merged into twelve promissory notes, each for $529.40.

One of the twelve notes, it seems, was subsequently taken up, reducing the indebtedness to $5823.40, and for this amount executory process on the mortgage was applied for and issued on October 29, 1898. The remaining notes were then nearly all due.

This suit, injoining the sale, followed.

The grounds for injunction are that the notes and mortgage were executed by plaintiff for an amount in excess of what he owed defendant company, which amount was estimated at the time and considered to be only approximately correct, subject to subsequent ascertainment of the true amount due.

It is alleged that he was overcharged on the account, which formed the basis of the notes, $1091 for the costs of telegrams, undue allowances made to parties to whom shingles were sold, overcharge on

freights, penalties for delayed shipments of shingles, fall in price of shingles, etc.

Another averment is that he was erroneously debited with $3335, the full amount paid one Kelly for certain timber purchased for the mill, when, as a matter of fact, he (plaintiff) had used only $600 worth of the timber.

This contention would make the Kelley timber the property of defendants, with the obligation on part of plaintiff to pay only for such of the timber as he used.

While plaintiff, in one part of his petition for injunction, insists that he owes defendant company only $1977.40, in another part it is represented that on October 22, 1898, which was just seven days before the order of seizure and sale issued, he tendered defendant's agent $3628.57 as the amount due the company. It is claimed, however, that this was done to avoid litigation and the closing down of the mill.

It is charged that the foreclosure of the mortgage was a malicious proceeding on the part of the company, conceived and put into execution with the motive and design of securing the ownership of the mill property, and that to this end steps were taken to ruin his (plaintiff's) credit, injure his business, stop his mill, etc.—all for the purpose of rendering it impossible for him to pay the mortgage debt and thus leading up to the defendant's acquisition of the mill at forced sale.

Upon this allegation is based a general claim for damages against the company of $5000 and $50 for each day the mill is shut down.

Defendant answered denying generally the averments of plaintiff and set forth at length the business situation between the company and plaintiff out of which grew the indebtedness and the effort to realize upon the same by means of the foreclosure proceedings. It is alleged that in addition to the amount of the mortgage notes held by the company, plaintiff owes the company the further sum of $263.39, for which judgment is asked in reconvention.

The judgment below was in favor of the defendant and plaintiff appeals.

The case involves mainly questions of fact.

An attentive consideration given to the voluminous testimony found in the record shows plaintiff's cause to be without merit save in one particular and that relates to the item of overcharge on freight.

In a contract between the parties, dated March 25, 1896, setting forth the business relationship entered into, the one with the other, it

is stated that shipments of shingles were to be made by plaintiff when ordered by defendant "and to be shipped on green basis—that is without being held to become dry, if said Vaughn Lumber Co. so request; but the Vaughn Lumber Co. guarantee weights not to exceed 350 pounds for each 1000 shingles."

It appears from the evidence that shingles shipped by rail are charged for in the matter of freight by the hundred weight, and not by the package, or bundle, and that green shingles put up in crates or packages of 1000 to the bundle often exceed 350 pounds per bundle.

Defendant did require the shipment of shingles in a green state, not allowing time to dry out, and the railroads did charge for freight upon the same in advance of 350 pounds per 1000 shingles.

This excess of freight charges was in each instance debited by defendant to plaintiff and entered into the statement of account, which was closed by the giving of the notes secured by the mortgage foreclosed.

Defendant must be held to its contract with plaintiff in this regard and must give credit for the overcharge on freights.

While it is true that the freight charges debited against plaintiff appeared upon the debit statements made to him by defendant from time to time, and reference to the same is made in some of the letters written by plaintiff to defendant, we hardly think, considering the cramped and dependent position in which the plaintiff found himself with reference to the defendant company, he is to be held to have acquiesced in such charges to the extent that he is now estopped from contesting the same. It would be inequitable to so hold him. And, besides, we think it may be fairly deduced from his letters that he objected to being charged with freight in excess of the contract guaranty.

His contention is that the aggregate of the overcharges on freight is $784.88 and that the same is shown on defendant's account against him.

The understanding at the time the mortgage notes were executed was that if errors and overcharges were subsequently discovered the same should be corrected by credits on the notes. Nor do we think the fact that one of the notes was afterwards returned to him as paid militates against his right now to claim this credit. The note was paid in the course of business between the parties by credits appearing in favor of plaintiff on account of consignments of shingles made to de-

fendant, and without reference to the indebtedness as a whole, and without intention of affecting his right to the correction of errors.

But the $784.88 to which plaintiff is entitled as a credit on this account is subject to a reduction by the amount due defendant as set forth in the reconventional demand—an amount not included in the notes given.

It seems that the notes were given for a sum estimated to cover the indebtedness then due. If errors were made against plaintiff, he was to have credit for same when ascertained. Equally is defendant entitled to relief should it appear that items of indebtedness existed, or afterwards developed, which ran the account in excess of the sum for which the notes were given. The demand in reconvention for $263.39 was such an item. The same figured on statements of account later furnished plaintiff to which he made no objection, and its correctness is otherwise established.

The ends of justice, we think, would be subserved by allowing plaintiff the overcharge of $784.88 on freight, and allowing defendant what he claims in reconvention $263.39, both without interest. The difference between the two amounts is $521.49, with which sum the writ of foreclosure in the sheriff's hands should be credited.

With regard to the Kelley timber transaction, the evidence leaves no doubt that this was a purchese by plaintiff for his own account, and the fact that he had the bill of sale therefor made out in the name of defendant company does not operate to vest ownership of the timber in the company. Plaintiff can not now be heard to shift his position, assert the timber to be that of defendant, and to claim that he (plaintiff) owes only for as much thereof as he has actually used.

Defendant company in its answer repudiates the idea of its ownership of the timber, but does claim a lien upon the same by reason of the fact that it supplied the purchase money which enabled plaintiff to buy it. This timber, or the greater part of it, is, it seems, on the Texas side of the Sabine river. What may be the rights of the parties with reference to the same, under their contract, by the laws of Texas, it is not for us to say. But so far as the jurisprudence and laws of Louisiana are concerned, the ownership of the timber is in the plaintiff, and defendant can have no greater right therein than to secure reimbursement of the moneys advanced to plaintiff to purchase it, and the expenses it may have been put to in consequence of holding the title at the request of plaintiff.

The amount supplied plaintiff to purchase the timber is included in the mortgage resting on the mill. Of course, if the mill property brings enough at the sale to pay the debt defendant would, in our view, have no further claim on the timber and could no longer refuse to convey the formal title thereof to the plaintiff.

Plaintiff's allegation of malice on part of defendant in resorting to the courts in enforcement of its mortgage rights has no sufficient foundation in fact. The testimony clearly negatives the contention.

Equally without merit are his representations with regard to a design and purpose formed by defendant to ruin his credit, wreck his fortunes, secure his mill, etc.

The judgment appealed from is found correct save in the particular hereinbefore referred to.

For the reasons assigned, it is ordered, adjudged and decreed that the sheriff of the parish of De Soto do enter as a credit upon the writ of seizure and sale in his hands, issued in the suit of the Vaughn Lumber Company vs. Zachariah W. Cannon, No. 5649 on the docket of the Ninth Judicial District Court in and for the parish of De Soto, Louisiana, the sum of $521.49, of date the 29th of October, 1898, and that he proceed forthwith to the due execution of said writ for the balance due thereunder.

It is further ordered, etc., that the injunction sued out by plaintiff herein be maintained to the extent of the said credit, that the judgment appealed from be amended in consonance with this decree, and that in all other particulars the same be affirmed.

It is further ordered, etc., that defendant be taxed with the costs of both courts.